JOSEPH A. MANNHEIM and Others v. CARLETON COLLEGE.[1]

June 16, 1897.

Nos. 10,454—(136).

Authority of Agent—Sufficiency of Evidence.

> Evidence considered, and *held* sufficient to justify the court in finding
> that one H. was the agent of the defendant, and acted within the scope
> of his authority.

De Minimis Non Curat Lex.

> The maxim, "De minimis," etc., applied.

Appeal by defendant from an order of the district court for St. Louis county, Ensign, J., refusing its motion for a new trial. Affirmed.

*White & McKeon,* for appellant.
*Eric L. Winje* and *J. Q. A. Crosby,* for respondents.

MITCHELL, J.   This action was brought to compel the defendant to surrender a note and discharge of record a collateral mortgage, the plaintiffs alleging that it had been paid in full except the sum of $13, which they tendered, but defendant refused to accept. The defendant, by way of defense and counterclaim, denied that the note and mortgage had been paid as alleged; alleged that there was still due on it $800, with interest; and asked that the mortgage be foreclosed. The evidence is undisputed that the plaintiffs had paid in full, except a small balance, to one Hall, who assumed to act as defendant's agent in the premises; and the only important question in the case is whether the evidence justified the trial court in finding that Hall had authority, as defendant's agent, to receive payment.

Counsel discuss the evidence as to Hall's agency under three heads, viz.:   Whether it showed (1) that he was defendant's general agent; or (2) its special agent with actual authority to receive payment of this note and mortgage; or (3) that it had clothed him with apparent authority to do so.   Under the view we take of the case, it is only necessary to consider the second of these questions.

[1] Reported in 71 N. W. 705.

One Page, residing in Northfield, was the financial secretary and loan agent of the college, and, for all the purposes of this case, was the college itself. Hall was a loan broker, residing in Duluth, from or through whom Page had taken a large number of loans in that vicinity, the usual mode of doing business being for Hall to send to Page the written application and statement of the proposed borrower, which Page examined and accepted or rejected, as he deemed advisable. As they matured, it was Page's custom to send to Hall for collection the notes and interest coupons. He also, when necessary, employed Hall to attend to the foreclosure of mortgages, the payment of taxes, etc. But this is of no present importance, except as introductory to what was done with reference to the particular transaction under consideration.

In September, 1889, the plaintiffs Mannheim and Haug executed to one Jones a mortgage, the one in controversy, on 80 acres of land, to secure the payment of $1,600 and interest at 8 per cent., payable one-half in one year, and one-half in two years, according to the conditions of two promissory notes. The notes and mortgage having become the property of Hall, he sold and transferred them to the college. As the interest coupons matured every six months, and when the first note matured, Page sent them to Hall for collection, the makers paid them, and Hall remitted the money to Page. When the second note was about to mature, Mannheim and Haug applied, through Hall, for an extension of the time of payment for three years. Page granted the extension, and Mannheim executed to defendant six semiannual interest notes, payable at Hall's office. As these matured, Page sent them, as before, to Hall for collection. In April, 1894, Mannheim and Haug, having traded, or having an opportunity to trade, the north 40 acres of the mortgaged premises for a house and lot in Duluth, applied to Hall to have the mortgage transferred from the 80 acres to the house and lot. Hall declined to recommend so large a loan on the house and lot, but said he thought he could place $500 on the house and lot, and the other $300 on the south 40 of the land. This led to a correspondence between Hall and Page, which resulted in the latter sending to the former the note and mortgage of Mannheim and Haug, and a satisfaction of the mortgage, with authority to Hall to take a new mortgage on the house and lot for $500, and

another on the south 40 acres of the land, or to accept payment of the old mortgage in cash, as Mannheim and Haug might prefer.

Defendant's counsel dispute this last proposition, and claim that Page merely gave Mannheim and Haug the option to give the new mortgages, or to pay the old mortgage in cash; that they elected to accept the former; and that the papers were transmitted by Page to Hall solely for the purpose of taking the new mortgages, and not of accepting payment in cash; and hence that Hall had no authority to receive payment in cash. We do not construe the correspondence that way. It is undoubtedly true that Mannheim and Haug, in the first instance, intended to give the new mortgages, and took steps towards doing so; but in view of all the correspondence, we are of opinion that Hall had authority to receive payment in cash if Mannheim and Haug, for any reason, saw fit to discharge the old mortgage in that way. Upon examination, a defect in the title of the house and lot was discovered, which delayed closing up the matter, until, in the meantime, Mannheim and Haug sold the south 40 acres of the land to the plaintiff Hill, who was to assume and pay one-half of the $800 mortgage on the 80 acres. In view of the inability of Mannheim and Haug, owing to the state of the title, to give a mortgage for $500 on the house and lot, it was determined to pay the $500 in cash. Hence, on August 4, 1894, Mannheim and Haug paid to Hall, on defendant's mortgage, $416 in cash; Hall agreeing to place the satisfaction of the mortgage on record as soon as Hill settled his part. At this time, Hall still retained the mortgage and satisfaction, but had previously returned the note to Page, a fact which was unknown to Mannheim and Haug.

We think it clear from Page's letter to Hall requesting a return of the note, and from his subsequent letters, that the return was desired merely for a special and temporary purpose of his own, and was not intended to terminate or at all modify Hall's previous authority in the premises. On August 10, 1894, Hill came in, and paid to Hall $100 in cash on the mortgage, and for the balance executed to defendant a new mortgage for $300, on the south 40 acres which he had purchased. Hall accepted this mortgage, and placed it on record, but the satisfaction of the old mortgage was not de-

livered or recorded, for the reason that there still remained due on the mortgage a small balance of interest, and a dispute had arisen between Hill and Mannheim and Haug as to which of the parties should pay it. It appears that Hall never remitted to Page the $516 which he had collected, or informed him of what had been done. The discovery of the situation led to some correspondence between Page and Hall, and between Page and the plaintiffs' attorney, which finally resulted in Page's denying Hall's authority to do what he had, and insisting that there was still due on the Mannheim and Haug mortgage on the 80 acres the sum of $800 and interest.

All that we deem material or important upon the question of the extent and scope of Hall's agency in the premises is the written correspondence between Page and Hall, commencing April 24, 1894, and closing September 5, 1895, and the subsequent correspondence between Page and plaintiff's attorney. This correspondence is mingled in the record with a large amount of other correspondence between Page and Hall on other business transactions, without much regard to order either in time or subject-matter; but we have taken the pains to carefully select it out, and arrange it in chronological order; and the result of our examination of it is that we think the evidence fully justified the court in finding that Hall had authority, as defendant's agent, to receive payment of the $516 in cash, and to accept the $300 mortgage on the south 40 acres of the land. As this is a mere question of fact, it would subserve no good purpose to discuss the evidence at any length. We think that the letters written by Page to plaintiff's attorney in September and October, 1895, are entitled to some weight, as amounting to an implied admission of Hall's authority. It does not appear that Page denied Hall's authority, or intimated that he had no authority to do what he had done until he wrote to Mannheim, on November 1, 1895; and it is reasonably apparent from the correspondence that he had been informed, at least before he wrote the last letter to plaintiff's attorney, that they had paid to Hall.

The defendant assigns as error the admission in evidence of a large amount of correspondence between Page and Hall in regard

to other business transactions. We think this was competent for the purpose of proving that Hall was the general agent of the defendant. The fact that, when it was all introduced, it may have failed to prove that fact, is immaterial.

The further point is made that there were some three dollars more due on the mortgage than was tendered and brought into court by the plaintiffs. It is not clear to us that this was the fact, but, even if it was, we think the maxim, "De minimis," etc., should apply.

Order affirmed.